**ORAL ARGUMENT NOT YET SCHEDULED**

Docket No. 15-7046
(Consolidated with 15-7045 and 15-7047)

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

IN RE:  STEPHEN THOMAS YELVERTON,
*Debtor*.

_____

STEPHEN THOMAS YELVERTON,
*Appellant*,

*v.*

DEBORAH MARM, et al.,
*Appellees*.

**Appeal from the United States District Court for the District of Columbia**

_____

**BRIEF OF APPELLEES DEBORAH MARM
AND PHYLLIS EDMUNDSON**

_____

Jeffrey L. Tarkenton
(D.C. Bar No. 376493)
Womble Carlyle Sandridge & Rice, LLP
1200 Nineteenth Street, N.W.
Suite 500
Washington, DC  20036
Tel:  (202) 857-4450
Fax:  (202) 261-0050
jtarkenton@wcsr.com

*Counsel for Appellees Deborah Marm and
    Phyllis Edmundson*

December 10, 2015

## <u>CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES</u>

Pursuant to D.C. Circuit Rule 28(a)(1), Deborah Marm and Phyllis Edmundson ("Appellees") submit the following certificate as to parties, rulings under review, and related cases:

**A.      Parties.**

The following persons and/or entities participated in the proceedings below and are participants in this appeal, which is Docket No. 15-7046.

**1.      Parties Before the Court.**

Appellant in this appeal is Stephen Thomas Yelverton.   Appellees are Deborah Marm and Phyllis Edmundson.

**2.      Parties Who Participated in the Case Below.**

The parties who participated in the case below are appellant Stephen Thomas Yelverton and appellees Deborah Marm ("Marm") and Phyllis Edmundson ("Edmundson").

**B.      Rulings Under Review.**

The United States District Court for the District of Columbia (the "District Court"), in three orders entered on March 3, 2015 (the "Orders Striking Appeals"), correctly struck Appellant Stephen Thomas Yelverton's ("Yelverton") three notices of appeal (the "District Court Notices of Appeal") of orders of the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court")

i

because Yelverton filed the District Court Notices of Appeal in violation of a pre-filing injunction order (the "Pre-Filing Injunction Order") which the District Court entered against Yelverton in Case No. 13-1544 on August 6, 2014. Yelverton violated the Pre-Filing Injunction Order by failing either to seek or to obtain leave of the District Court to file the District Court Notices of Appeal.

The instant appeal, which was docketed by this Court as Docket No. 15-7046, is Yelverton's appeal of an order that the District Court entered in Case No. 15-208 on March 3, 2015, in which the District Court struck one of the District Court Notices of Appeal which, in turn, involved an appeal of dispositive orders that the Bankruptcy Court entered in Adversary Proceeding No. 14-10024.

By an order dated April 30, 2015, this Court consolidated this appeal with Yelverton's appeals of identical orders that the District Court also entered on March 3, 2015, which have been docketed as Docket Nos. 15-7045 and 15-7047. The District Court entered the two orders in Case Nos. 15-277 and 14-2209, which, in turn, involved appeals of dispositive orders that the Bankruptcy Court entered in litigation between Yelverton and Wendell Webster (the "Trustee"), who serves as the Chapter 7 bankruptcy trustee for Yelverton.

**C.   Related Cases.**

**1.   District of Columbia Circuit Court of Appeals.**

The three orders under review have not previously been before this Court or any other court.  Related cases which Yelverton filed in this Court against Marm, Edmundson and/or the Trustee as well as a related appeal that Yelverton filed in a lawsuit he filed against the District of Columbia in connection with his violation of the Pre-Filing Injunction Order are as follows:

Docket No. 11-7063, *Yelverton v. Marm, et al.*

Docket No. 13-7016, *Yelverton v. Webster, et al.*

Docket No. 14-7137, *Yelverton v. Webster, et al.*

Docket No. 14-7147, *Yelverton v. Webster, et al.*

Docket No. 14-7149, *Yelverton v. Webster, et al.*

Docket No. 15-7045, *Yelverton v. Federal Insurance Co.*

Docket No. 15-7047, *Yelverton v. Webster, et al.*

Docket No. 14-7145, *Yelverton v. District of Columbia Department of Public Works*

Yelverton filed an appeal with the District Court on December 7, 2015 of an order which, as of this date, has not been assigned a docket number.  Yelverton appealed an order entered in Case No. 15-1844 by which the District Court denied a motion for leave to appeal that Yelverton filed.

## 2.     Fourth Circuit Court of Appeals.

Related appeals that Yelverton filed against Marm and/or Edmundson in the United States Court of Appeal for the Fourth Circuit ("Fourth Circuit Court of Appeals") are as follows:

Docket No. 11-1553, *Yelverton v. Yelverton Farms, Ltd.*

Docket No. 12-2003, *Yelverton v. Yelverton Farms, Ltd.*

Docket No. 15-1558, *Yelverton v. Yelverton Farms, Ltd.*

Docket No. 15-2342, *Yelverton v. Edmundson*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

A Corporate Disclosure Statement is not required because Appellees are individuals.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

    A.      Parties ......................................................................................i

           1.      Parties Before the Court.................................................i

           2.      Parties Who Participated in the Case Below .............................i

    B.      Rulings Under Review .........................................................i

    C.      Related Cases ................................................................ iii

           1.      District of Columbia Circuit Court of Appeals........................ iii

           2.      Fourth Circuit Court of Appeals .................................................iv

CORPORATE DISCLOSURE STATEMENT .......................................................v

TABLE OF AUTHORITIES ................................................................ viii

GLOSSARY................................................................................................xi

STATEMENT OF ISSUES PRESENTED..................................................................1

STATEMENT OF APPLICABLE APPELLATE REVIEW ...................................1

STATEMENT OF FACTS ...............................................................................1

    A.      The Bankruptcy Case. ........................................................1

    B.      The Trustee.......................................................................1

    C.      The Settlement Agreement and the Pre-Filing Injunction Order..................................................................................2

           1.      The Settlement Order.....................................................2

           2.      The Pre-Filing Injunction Order. ...................................4

    D.      The Lawsuit.......................................................................8

    E.      Yelverton's Violations of the Pre-Filing Injunction Order..................9

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT .................................................................................10

I.    The District Court Properly Entered the Orders Striking Appeals. ..........................................................................10

II.    The Bankruptcy Court's Orders Dismissing the Lawsuit and Denying Reconsideration Were Plainly Correct. ................13

A.    The Bankruptcy Court Correctly Held That Yelverton Lacks Standing to File the Amended Complaint to Assert Claims Which, if They Existed, Would Belong to the Bankruptcy Estate. ........................................16

B.    The Bankruptcy Court Correctly Held That Yelverton Failed to State a Claim That Marm and Edmundson Violated the Automatic Stay. ....................................19

C.    The Bankruptcy Court Correctly Held That Yelverton Failed to State a Claim That Marm and Edmundson Violated RICO Laws. ...............................................21

D.    The Bankruptcy Court Correctly Held That Yelverton's Claims Are Barred by the Doctrines of Collateral Estoppel, Release and *Res Judicata* .......................................23

CONCLUSION AND PRAYER FOR RELIEF .....................................26

CERTIFICATE OF COMPLIANCE ...................................................27

ADDENDUM ...............................................................................29

# TABLE OF AUTHORITIES

## Cases

*Alcom Am. Corp. v. Arab Banking Corp.*, 48 F.3d 539 (D.C. Cir. 1995)..................1

*Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446
    (3d Cir. 1982)..................................................................................20

*Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*,
    140 F.3d 898 (11th Cir. 1998) ..........................................................16

*Caldwell v. Obama*, 6 F. Supp. 3d 31 (D.D.C. 2013)..................................7

*Carley Capital Grp. v. Fireman's Fund Ins. Co.*, 889 F.2d 1126
    (D.C. Cir. 1989) ..............................................................................20

*Cook v. Wells Fargo Bank, N.A.*, Nos. NM-11-082 & 04-17704,
    2012 WL 1356490 (B.A.P. 10th Cir. Apr. 19, 2012) .......................17

*Eakin v. Goffe, Inc. (In re 110 Beaver St. P'ship)*, 355 Fed. Appx. 432,
    2009 WL 4874783 (1st Cir. 2009)....................................................17

*Estate of Spirtos v. Superior Court Case*, 443 F.3d 1172 (9th Cir. 2006) ........16, 18

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) ....................19

*In re Collins*, 489 B.R. 917 (Bankr. S.D. Ga. 2012)................................24

*In re Eagle-Pitcher Indus., Inc.*, 999 F.2d 969 (6th Cir. 1993) ................1

*In re Gibraltar Res., Inc.*, 210 F.3d 573 (5th Cir. 2000) ......................24

*In re Green*, 669 F.2d 779 (D.C. Cir. 1981) ........................................11

*In re Salander*, 450 B.R. 37 (Bankr. S.D.N.Y. 2011)...........................24

*In re Weisman*, 5 F.3d 417 (9th Cir. 1993)..............................................1

*In re Yelverton*, 526 B.R. 429 (D.D.C. Aug. 6, 2014)..............................9

\* Authorities upon which we chiefly rely are marked with an asterisk.

**Cases, con't**

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) ............................................................................................19

*Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575 (7th Cir. 1989) ..........................................................................................20

*McGuirl v. White*, 86 F.3d 1232 (D.C. Cir. 1996) ........................................17, 18

*Moses v. Howard Univ. Hosp.*, 606 F.3d 789 (D.C. Cir. 2010) ...................16, 18

*Powers v. Ohio*, 499 U.S. 400 (1991) ..................................................................16

*United States v. Inslaw, Inc.*, 932 F.2d 1467 (D.C. Cir. 1991)............................20

*Urban v. United Nations*, 768 F2d 1497 (D.C. Cir. 1985) ..............................8, 11

*Warth v. Seldin*, 422 U.S. 490 (1975) .................................................................16

*Wash. Mut., Inc. v. Fed. Deposit Ins. Corp.*, 659 F. Supp. 2d 152 (D.D.C. 2009) ...................................................................................20

*Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935 (D.N.M. 2008) .........................17

**Statutes**

11 U.S.C. § 323(a) ................................................................................................18

11 U.S.C. § 330(a)(1)............................................................................................14

11 U.S.C. § 362(a) ...........................................................................................14, 20

11 U.S.C. § 362(k)(1)............................................................................................16

11 U.S.C. § 704(a)(1)............................................................................................20

**Rules**

D.C. Circuit Rule 28(a)(1) .....................................................................................i

D.C. Circuit Rule 32(e).........................................................................................27

Federal Rule of Appellate Procedure 32(a)(7)(C) ...............................................27

**Rules, con't**

Federal Rule of Civil Procedure 9(b)......................................................................15

Federal Rule of Civil Procedure 12(b)(6) ............................................................14

**Docketed Cases**

*Yelverton v. Yelverton Farms, Ltd.*, Case No. 09-331 (E.D.N.C. filed July 20, 2009).............................................................................................5

*Yelverton v. Yelverton Farms, Ltd.*, Case No. 14-365 (E.D.N.C. filed June 24, 2014)............................................................................................5

*Yelverton v. Edmundson*, Case No. 10-10003 (Bankr. D.C. filed January 14, 2010).......................................................................................5

*Yelverton v. Edmundson*, Case No. 10-10004 (Bankr. D.C. filed January 14, 2010).......................................................................................5

*Yelverton v. Marm*, Case No. 14-10024 (Bankr. D.C. filed June 16, 2014).............5

*Yelverton v. Edmundson*, Case No. 13-1543 (N.C. Sup. Ct., Wayne Cnty.).............5

*In re Yelverton*, Case No. 12-1539 (D.D.C. filed Sept. 17, 2012)...........................5

*In re Yelverton*, Case No. 13-454 (D.D.C. filed Apr. 5, 2013)................................5

*In re Yelverton*, Case. No. 13-1544 (D.D.C. filed Oct. 8, 2013) ............................5

*Ex rel. Yelverton*, Case No. 14-10014 (Bankr. D.C. filed January 14, 2014) ..........5

*In re Yelverton*, Case No. 09-414 (Bankr. D.C. filed May 14, 2009).......................7

# GLOSSARY

| | |
|---|---|
| Amended Complaint | Amended Complaint Yelverton filed with the United States Bankruptcy Court for the District of Columbia on August 6, 2014 |
| Appellant's Brief | Consolidated Brief and Addendum filed on November 10, 2015 |
| Appellees | Deborah Marm and Phyllis Edmundson |
| Approval Order | Order entered on June 19, 2012 by the United States Bankruptcy Court for the District of Columbia approving the Settlement Agreement |
| Bankruptcy Court | The United States Bankruptcy Court for the District of Columbia |
| Complaint | Complaint that Yelverton filed with the United States Bankruptcy Court for the District of Columbia on June 16, 2014 |
| Court of Appeals Notices of Appeal | Notices of Appeal filed with the United States District Court for the District of Columbia on April 3, 2015 |
| District Court | The United States District Court for the District of Columbia |
| District Court Notices of Appeal | Notices of appeal filed with the United States Bankruptcy Court for the District of Columbia on March 3, 2015 |
| Edmundson | Appellee Phyllis Edmundson |
| JA | Joint Appendix |
| Marm | Appellee Deborah Marm |

| | |
|---|---|
| NC District Court | The United States District Court for the Eastern District of North Carolina |
| Orders Striking Appeals | Orders entered by the United States District Court for the District of Columbia on March 3, 2015 in Docket Nos. 15-208, 15-277, and 14-2209 |
| Petition Date | May 14, 2009, date on which Stephen Thomas Yelverton filed his bankruptcy petition |
| Pre-Filing Injunction Order | Order entered on August 6, 2014 by the United States District Court for the District of Columbia in Docket No. 13-1544 |
| Settlement Agreement | Mutual Release and Settlement Agreement reached by and among Wendell Webster, Yelverton Farms, Ltd., Phyllis Edmundson, Charles Edmundson, Deborah Marm and Walter J. Marm, Jr. |
| Trustee | Wendell Webster, Chapter 7 Trustee for Stephen Thomas Yelverton |
| Yelverton | Appellant Stephen Thomas Yelverton |

## STATEMENT OF ISSUES PRESENTED

Did the District Court properly enter the Orders Striking Appeals because Yelverton violated the Pre-Filing Injunction Order when he filed an appeal without seeking leave of the District Court.

## STATEMENT OF APPLICABLE APPELLATE REVIEW

This case involves a review of the District Court's Orders Striking Appeals and is subject to *de novo* review. *See Alcom Am. Corp. v. Arab Banking Corp.*, 48 F.3d 539 (D.C. Cir. 1995) (citing *In re Weisman*, 5 F.3d 417, 419 (9th Cir. 1993); *In re Eagle-Pitcher Indus., Inc.*, 999 F.2d 969, 972 (6th Cir. 1993)).

## STATEMENT OF FACTS

**A.    The Bankruptcy Case.**

1.    On May 14, 2009 (the "Petition Date"), Appellant filed a Chapter 11 bankruptcy petition with the Bankruptcy Court, Case No. 09-00414. (JA__.)  On August 20, 2010, Appellant's case was converted to a Chapter 7 case. (JA__.)

**B.    The Trustee.**

On September 9, 2010, Wendell Webster was appointed to serve as the Chapter 7 bankruptcy trustee for Yelverton. (JA__.)

### C.     The Settlement Agreement and the Pre-Filing Injunction Order.

### 1.     The Settlement Order.

The ultimate subject of the instant appeal, the related appeals that Yelverton filed with this Court, as well as dozens of lawsuits, motions and other pleadings that Yelverton filed in the Bankruptcy Court, in the District Court, in the United States District Court for the Eastern District of North Carolina ("NC District Court"), and in the Superior Court of Wayne County, North Carolina, is a Settlement Agreement (the "Settlement Agreement") that the Trustee entered into with Edmundson, Marm, their spouses and Yelverton Farms, Ltd. ("Yelverton Farms"), which provided for (i) the settlement of all claims Yelverton had asserted against Edmundson, Marm and others in various lawsuits he filed against them in North Carolina and Washington, D.C. and (ii) the transfer of Yelverton's bankruptcy estate's interests in 1,333 shares of Yelverton Farms stock. (JA__.) In exchange, the Settlement Agreement provides that Yelverton's bankruptcy estate would be paid $110,000. (JA__.)

The Trustee filed a motion with the Bankruptcy Court to approve the Settlement Agreement on May 4, 2012. (JA__.) The Bankruptcy Court conducted a day-long hearing on the motion on June 18, 2012, at which Yelverton appeared and participated and at which Webster testified. (JA__.) Yelverton cross-examined Webster for more than two hours and gave lengthy opening and closing

statements.     (JA__.)     The Bankruptcy Court rendered findings of fact and conclusions of law from the bench in a 42-minute-long decision and approved the Settlement Agreement by an order entered on June 19, 2012 (the "Approval Order").  (JA__.)  At the hearing, the Court stated

> So I think that not approving the settlement would add to the expense and the delay attendant to the litigation, and it would be inconvenient to proceed to actual litigation instead of proceeding to a settlement that I think is well-grounded and [a result of] sound business judgment.
>
> The trustee testified at length and discussed his inquiries of Mr. Yelverton regarding the contentions in the litigation, the defenses that were being raised, and showed, I thought, an extensive knowledge of what the issues were.  And showed a substantial diligence on his part in digging into the various pleadings that were filed, various motions that were filed.  He reviewed the case law that was submitted by Mr. Yelverton to him incident to reviewing the litigation.  Also the statutory provisions that Mr. Yelverton provided.  And I'm convince[d] that the trustee did give very careful thought to the likely outcome of a litigation and its expense and reasonably relied upon the advice of his counsel that other than the ownership interest in Yelverton Farms, these other claims were not nearly as valuable in terms of trying to negotiate a settlement.
>
> The motion is approved.  The settlement is in the interest of creditors.  And when I include creditors, I include the debtor as a residuary entity entitled to whatever could be obtained if enough were received to pay creditors in full and something left over for the debtor.  I think he recognizes that that never would happen and that the reason that he's objecting to the settlement is because he wants to minimize how much he has left over to pay nondischargeable debts.   This settlement falls readily between the lowest and highest points in the range of reasonableness.  I am convinced the trustee has used sound business judgment in trying to arrive at this settlement and

> avoid the expenses of litigation and bring this matter to a close
> so that creditors can receive some distribution.  The motion is
> approved.

12/12/14 Mem. Op. at 7-8 (quoting 6/18/12 Hearing Tr. at 218, 227-28, 230-31).

(JA__.)

After filing numerous motions for reconsideration and other motions seeking to collaterally attack the Approval Order, Yelverton filed three appeals with the District Court, which were docketed as Appeal Nos. 12-01539, 13-00454 and 13-01544.  (JA__.)  On August 6, 2014, the District Court entered orders affirming the Approval Order and related Bankruptcy Court orders, (JA__) and Yelverton subsequently appealed to this Court.  The appeals were docketed as Appeal Nos. 14-7137, 14-7147 and 14-7149 (the "Court of Appeals Notices of Appeal").  By orders entered on March 9, 2015, this Court affirmed the District Court orders. Yelverton subsequently filed motions for reconsideration, each of which this Court denied by orders entered on June 23, 2015.  The Approval Order is final and is not subject to further appeal.

## 2.     The Pre-Filing Injunction Order.

One of the District Court's orders that Yelverton appealed, and which this Court affirmed by one of the orders entered on March 9, 2015, is the Pre-Filing Injunction Order that the District Court entered against Yelverton on August 6, 2014 in Docket No. 13-1544.  The District Court entered the Pre-filing Injunction

Order based on Yelverton's " long history of vexatious and harassing filings" by
which he "clogged the court system with frivolous filings and [] abused the judicial
process." Pre-Filing Injunction Order at 9. (JA__.) In finding that it was
necessary to issue a pre-filing injunction against Yelverton, the District Court
described Yelverton's actions to contest the Settlement Agreement, and to stop the
transfer of the stock in Yelverton Farms, as follows:

> Likewise, Yelverton has filed numerous lawsuits in an attempt
> to claw-back his stock in Yelverton Farms from bankruptcy. ***He
> has filed six suits*** in the Eastern District of North Carolina, the
> United States Bankruptcy Court for the District of Columbia,
> and the Superior Court of Wayne County, North Carolina, all
> claiming breaches of fiduciary duties by Edmundson and Marm
> and seeking to force a transfer of stock or distributions.
> Yelverton v. Yelverton Farms, Ltd., 9-331 (E.D.N.C.);
> Yelverton v. Yelverton Farms, 14-365 (E.D.N.C.); Yelverton v.
> Edmundson, 10-10003 (Bankr. D.C.); Yelverton v. Edmundson,
> 10-10004 (Bankr. D.C.); Yelverton v. Marm, 14-10024 (Bankr.
> D.C.); Yelverton v. Edmundson, 13-1543 (N.C. Sup. Ct, Wayne
> Cnty.). Three of five the current appeals pending before this
> Court involve various orders by the bankruptcy court regarding
> this same property. In re Yelverton, 12-1539 (D.D.C.); In re
> Yelverton, 13-454 (D.D.C.); In re Yelverton, 13-1544 (D.D.C.).
>
> ***Yelverton has also filed cases and motions for no other
> apparent purpose than harassment.*** Exhibit A is the sanctions
> motion in this case, which seeks sanctions against counsel for
> Edmundson and Marm, including counsel not even involved in
> the case, based on fanciful allegations of fraud that have been
> rejected repeatedly by this and other courts. Yelverton filed a
> case in bankruptcy court claiming fraud and breach of fiduciary
> duties by the bankruptcy trustee and counsel for Edmundson
> and Marm based on these same or similar frivolous allegations.
> Ex rel. Yelverton, 14-10014 (Bankr. D.C.). As stated above,
> he sued counsel for the D.C. Court of Appeals for determining

that Yelverton's abusive conduct warranted disciplinary measures. ***Filings such as these, aimed at nothing more than harassing the individuals involved in cases with Yelverton, are appropriate grounds for a pre-filing injunction***.

Pre-filing Injunction Order at 6-7 (emphasis added).  (JA__.)

The District Court noted that other courts had also entered pre-filing injunctions against Yelverton, stating:

This is not the first time that a court has issued a pre-filing injunction against Yelverton.  The ***bankruptcy court*** sanctioned Yelverton by relieving other parties from the obligation to respond to his filings unless so ordered by the court.  Mem. Decision, In re Yelverton, 9-414 (Bankr. D.C. Sep. [sic] 10, 2013).  The ***Superior Court of Wayne County***, North Carolina issued a "Gatekeeper Order" restricting Yelverton from filing any additional documents with the court, Pre-Filing Injunction, Yelverton v. Edmundson, et al., 13-1543, at 6 (N.C. Sup. Ct, Wayne Cnty. Apr. 4, 2014), and noting the other pre-filing injunctions imposed upon Yelverton, including one in D.C. Family Court.  Id. at 2-5 & nn.2-3.  And ***in this Court, Judge Wilkins*** issued a pre-filing injunction in one of Yelverton's bankruptcy appeals because Yelverton had filed numerous supplemental pleadings after the appeal had been fully briefed. Order, In re Yelverton, 12-1539 (D.D.C. Dec. 12, 2012) ("Yelverton shall refrain from filing additional documents without first seeking leave of Court").  Yelverton's motions for reconsideration of that order were denied, as was his interlocutory appeal to the D.C. Circuit.  Mandate, In re Yelverton, 12-1539 (D.D.C. Oct. 16, 2013).  After ***he proceeded to violate the order*** repeatedly, the Court issued a second order "warn[ing him] that further abuses may result in sanctions, including dismissal with prejudice."  Order, In re Yelverton, 12-1539, at 2 (D.D.C. Jan. 9, 2014).  Undeterred, Yelverton proceeded to file five additional motions in that case—all of which either sought reconsideration of the Court's orders or presented additional arguments in support of his bankruptcy appeal—in direct violation of the Court's multiple

6

orders.  After the Court struck his subsequent motions as being in violation of the prior orders, Minute Order, In re Yelverton, 12-1539 (D.D.C. June 3, 2014), Yelverton proceeded to move for leave to certify another interlocutory appeal and for reconsideration of all three orders.

*Id.* at 7-8 (emphasis added).  (JA__.)

The District Court entered the Pre-Filing Injunction Order against Yelverton because of Yelverton's abusive and frivolous filings pertaining to the same factual allegations and claims that Yelverton asserted in the instant case regarding the Settlement Agreement.  The District Court concluded:

> Yelverton has also filed cases and motion for no other apparent purpose than harassment.  Exhibit A is the sanctions motion in this case, which seeks sanctions against counsel for Edmundson and Marm, including counsel no even involved in the case, based on fanciful allegations of fraud that have been rejected repeatedly by this and other courts.  Yelverton filed a case in bankruptcy court claiming fraud and breach of fiduciary duties by the bankruptcy trustee and counsel for Edmundson and Marm based on these same or similar frivolous allegations.  Ex rel. Yelverton, 14-10014 (Bankr. D.C.).  As stated above, he sued counsel for the D.C. Court of Appeals for determining that Yelverton's abusive conduct warranted disciplinary measures.  Filings such as these, aimed at nothing more than harassing the individuals involved in cases with Yelverton, are appropriate grounds for a pre-filing injunction.  See Caldwell [v. Obama, 6 F. Supp. 3d 31, 49-51], 2013 WL 6094237, at *11-12 [D.D.C. 2013] (issuing pre-filing injunction against plaintiff for making "repetitive filings of meritless claims against federal officials, federal judges and private parties" who issue rulings against him or are opposing parties or counsel).

*Id.* at 7.  (JA__.)

This Court affirmed the Pre-Filing Injunction Order by an order entered in Docket No. 14-7147 on March 9, 2015, stating "[f]urthermore, the district court properly entered the pre-filing injunction based on its determination such relief is necessary to ensure 'the orderly and expeditious administration of justice.'" (JA__) (quoting *Urban v. United Nations*, 768 F2d 1497, 1500 (D.C. Cir. 1985)).   That order is now final and is no longer subject to appeal.

**D.    The Lawsuit.**

On June 16, 2014, Yelverton filed his complaint ("Complaint") in the instant action against his sisters seeking monetary damages and claiming that they had violated the automatic stay in the main bankruptcy case, resulting in an inappropriately low settlement and thereby causing him injury.  (JA__.)  He then amended his complaint ("Amended Complaint") to bring claims against them under the Racketeer Influenced and Corrupt Organizations Act (RICO).  (JA__.)

On December 12, 2014, the Bankruptcy Court entered an order dismissing the lawsuit and on January 20, 2015, the Bankruptcy Court entered its Memorandum Decision and Order Denying Motion to Alter or Amend Decision Per FRCP, Rule 59(e).  (JA__.)  The Bankruptcy Court aptly described the Adversary Proceeding as "Yelverton's vexatious attempt to circumvent the settlement approved by the Court via bringing this frivolous adversary proceeding against the defendants." 1/20/15 Mem. Op. at 6.  (JA__.)

### E.      Yelverton's Violations of the Pre-Filing Injunction Order.

Yelverton filed the District Court Notices of Appeal without complying with the requirement in the Pre-Filing Injunction Order that Yelverton obtain leave of the District Court.  As a result, the District Court entered the Orders Striking Appeals stating:

> In an August 6, 2014 Opinion and Order, the Court sanctioned Appellant Stephen Thomas Yelverton for frivolous and abusive filings because of his repeated attempts, in this Court and in others, to harass individuals associated with his bankruptcy proceedings.  Because Yelverton had filed duplicative adversary proceedings and motions related to allegations of fraud by the bankruptcy trustee and his siblings, the Court ordered that "Appellant shall seek leave of this Court before filing any new civil action in this Court by filing a separate motion for leave to file, not to exceed three pages.  In seeking leave to file any new complaint, the plaintiff must explain what new matters are raised to warrant the filing of a new complaint."  In re Yelverton, No. 13-cv-1544, 2014 WL 3850052, at *5 [526 B.R. 429, 435] (D.D.C. Aug. 6, 2014).  This Order extends to appeals from bankruptcy orders, such as this case.

Orders Striking Appeals at 1.  (JA__.)

Subsequently, on April 3, 2015, Yelverton filed the Court of Appeals Notices of Appeal, also in plain violation of the Pre-Filing Injunction Order. (JA__.)

### <u>SUMMARY OF ARGUMENT</u>

This Court should dismiss the appeal because Yelverton plainly violated the Pre-Filing Injunction Order when he filed an appeal without seeking leave of the

District Court.   Moreover, the Bankruptcy Court's dismissal of the Amended Complaint, by which Yelverton seeks once again to relitigate his claims relating to the Settlement Agreement, was clearly correct.   Yet, the Pre-Filing Injunction Order and court orders describing Yelverton's lawsuits as frivolous and abusive have had no effect on his war against his sisters and others.   Accordingly, this Court should fashion appropriate relief to restrain Yelverton from further harassment.

## **ARGUMENT**

### **I.     The District Court Properly Entered the Orders Striking Appeal.**

There is no dispute that Yelverton failed either to seek or to obtain leave of the District Court before filing the District Court Notices of Appeal.   Likewise, there is no dispute that Yelverton failed either to seek or to obtain leave of the District Court before filing the Court of Appeals Notices of Appeal.   The District Court entered the Pre-Filing Injunction Order not only because Yelverton harassed Edmundson and Marm by repeatedly filing abusive and frivolous pleadings, but also because Yelverton harassed other individuals and because he repeatedly and flagrantly violated court orders.

The basis for the District Court to enter the Pre-Filing Injunction Order was clear.  As the District Court stated:

> The constitutional right of access to the courts "is neither absolute nor unconditional."   In re Green, 669 F.2d 779, 785

(D.C. Cir. 1981). In response to a litigant who seeks to flood the courts with meritless claims and filings, the Court "has an obligation to protect and preserve the sound and orderly administration of justice." <u>Urban v. United Nations</u>, 768 F.2d 1497, 1500 (D.C. Cir. 1985) (internal citations omitted). "[I]n fashioning a remedy to stem the flow of frivolous actions, a court must take great care not to 'unduly impair . . . [a litigant's] constitutional right of access to the courts." <u>Id.</u> (internal citations omitted). By the same token, if a litigant continues to abuse the judicial process by filing frivolous, duplicative, and harassing lawsuits, "a Court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." 768 F.2d at 1500.

Pre-Filing Injunction Order at 4. (JA__.)

The District Court entered the Pre-Filing Injunction Order concluding:

In sum, the record amply demonstrates that a pre-filing injunction is warranted in light of Yelverton's long history of vexatious and harassing filings. He has clogged the court system with frivolous filings and has abused the judicial process. This relief is therefore necessary to ensure "the orderly and expeditious administration of justice." <u>Urban</u>, 768 F.2d at 1500.

*Id.* at 9. (JA__.)

The District Court imposed the simple requirement that Yelverton seek leave of Court before filing any new civil action in the District Court by filing a short three-page motion for leave. However, Yelverton blatantly violated the Pre-Filing Injunction Order by filing both the District Court Notices of Appeal and the Court of Appeals Notices of Appeal without seeking leave to do so. The District Court

properly and correctly entered the Orders Striking Appeals, and this Court should affirm the Orders Striking Appeals.

Yelverton has demonstrated that he is capable of complying with the Pre-Filing Injunction Order. For example, in Case No. 15-1844 in the District Court, Yelverton properly filed a motion for leave to file appeals. However, because the appeals were frivolous, the District Court denied the motion concluding

> In the three decisions that Yelverton seeks leave to appeal, the Bankruptcy Court rejected as frivolous his argument that he is entitled to exempt from the debtor estate 277 acres of land that he previously conveyed to his sister, Deborah Marm. Because Yelverton transferred that land to Marm, and because the Bankruptcy Court rejected his subsequent challenge to the conveyance as fraudulent, the 277 acres are not part of the bankruptcy estate and are thus not subject to any claim of exemption. As the Bankruptcy Court explained, "Yelverton's claim of an exemption of Marm's property is no more effective than would be a claim of exemption of the Washington Monument." Mem. Decision Re Debtor's Mot. Avoidance Judicial Lien 3; see also Mem. Decision and Order Denying Debtor's Mot. Recons. 4. In his motion for leave to appeal those decisions, Yelverton asserts only that "the Bankruptcy Court and the Chapter 7 Trustee have refused him a 'fresh start' by preventing him from taking Exemptions of property from the Debtor Estate." Mot. Leave Appeal Bankruptcy Matter 1. **_Because this argument is merely a conclusory reiteration of clearly frivolous arguments already rejected in three decisions by the Bankruptcy Court, Yelverton has not set forth a colorable basis for his motion to appeal those decisions, as required by this Court's pre-filing injunction_**. The Court will therefore deny Yelverton's Motion for Leave to Appeal.

11/2/15 District Court Order at 1-2 (emphasis added).

Yelverton filed a notice of appeal of that order on December 7, 2015.

## II.  The Bankruptcy Court's Orders Dismissing the Lawsuit and Denying Reconsideration Were Plainly Correct.

The subject of these three appeals is the District Court's March 3, 2015 Orders Striking Appeals.  Nonetheless, Yelverton's Consolidated Brief and Addendum ("Appellant's Brief") focuses solely on the Bankruptcy Court's orders dismissing his Amended Complaint and ignores the Orders Striking Appeals.  As set forth below, Yelverton's challenges to the Bankruptcy Court's orders are frivolous and baseless.

Marm and Edmundson were defendants in Adversary Proceeding No. 14-10024, which was the subject of District Court Case No. 15-208, and which is now the subject of Appeal No. 15-7046.  Marm and Edmundson are not parties to Appeal Nos. 15-7045 and 15-7047 with which this appeal has been consolidated.  However, the appeals are fundamentally related because all three appeals consist of frivolous and abusive – and patently false – attacks on the parties to the Settlement Agreement.

In its December 12, 2014 Memorandum Decision re Motion to Dismiss, the Bankruptcy Court succinctly summarized Yelverton's blatantly frivolous lawsuit, and the reasons to dismiss it, as follows:

> The plaintiff, Stephen Thomas Yelverton, is the debtor in the main bankruptcy case within which he pursues this adversary proceeding against his sisters, Deborah Marm and Phyllis

Edmundson.  Yelverton commenced his bankruptcy case under Chapter 11 of the Bankruptcy Code (11 U.S.C.) in 2009.  Later in 2009, Yelverton brought a lawsuit in North Carolina against Marm and Edmundson, asserting various business law and tort causes of action.  In 2010, the court converted Yelverton's case from chapter 11 to chapter 7, and Wendell W. Webster became the chapter 7 trustee and, as such, the representative of the estate and the substituted plaintiff in the North Carolina law suit.  Marm and Edmundson negotiated with Webster, and settled the litigation in 2012 by agreeing to pay the estate $110,000.  In return, the trustee agreed to a global release of the estate's claims against them and to a release of any ownership interest of Yelverton in the closely-held family business.  The settlement was approved by the court after a full-day evidentiary hearing.

Since then, in ***numerous and frivolous*** ways, both direct and indirect, Yelverton has unsuccessfully attacked the approval of the settlement.  Notably, in a related adversary proceeding (already dismissed), Yelverton collaterally attacked the settlement by suing Webster and making ***unsupported allegations that Webster colluded with Marm and Edmundson's counsel*** during settlement negotiations in order to devalue the estate's assets for the benefit of Marm and Edmundson.  ***In this proceeding, Yelverton again collaterally attacks the settlement process, this time by claiming that Marm and Edmundson violated the automatic stay of 11 U.S.C. § 362(a) and the Racketeer Influenced and Corrupt Organizations Act (RICO) by conspiring with Webster to devalue the estate's assets for their own benefit and to facilitate their control of estate property***.  In fact, they merely defended against his North Carolina lawsuit, filing an answer and a motion to dismiss, and engaged in settlement negotiations with the chapter 7 trustee.

In short, the amended complaint must be dismissed because (1) Yelverton does ***not have standing*** to seek the monetary damages he claims; (2) the amended complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure for it fails to include well-

14

pled facts supporting the claims asserted, and *it is not plausible* on its face; (3) it *fails to plead special matters* with the requisite particularity under Rule 9(b) of the Federal Rules of Civil Procedure; and (4) Yelverton is barred from litigating his claims against his sisters by the doctrines of *release, res judicata (claim preclusion), and collateral estoppel (issue preclusion)*.

12/12/14 Mem. Op. at 1-3 (emphasis added).  (JA__.)

The Bankruptcy Court, in an extensive and comprehensive memorandum opinion, addressed each of the bases for dismissing the Amended Complaint.  *See* 12/12/14 Mem. Op. at 9-49.  (JA__.)

Yelverton filed a motion for reconsideration which, in an extensive and comprehensive Memorandum Decision and Order Denying Motion to Alter or Amend Decision per FRCP, Rule 59(e), entered on January 20, 2015 in Adversary Proceeding No. 14-10024, the Bankruptcy Court denied.  (JA__.)

Yelverton, in his appeal, asserts that the Bankruptcy Court erroneously ruled that (a) he lacks standing to prosecute the appeals, (b) his claims are post-petition claims that belong only to him and not to his bankruptcy estate, (c) *res judicata* and collateral estoppel do not bar the Adversary Proceeding, (d) Yelverton's claims were not released, (e) Yelverton properly pleaded the RICO claims, and (f) Yelverton property pleaded that Appellees violated the automatic stay.

A.     **The Bankruptcy Court Correctly Held That Yelverton Lacks Standing to File the Amended Complaint to Assert Claims Which, if They Existed, Would Belong to the Bankruptcy Estate.**

The Bankruptcy Court correctly held that Yelverton lacked standing to allege claims for a violation of the automatic stay and for RICO.  The Bankruptcy Court's analysis and holding are clear.  The Bankruptcy Court stated:

> Section 362(k)[(1)] (11 U.S.C.) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  This essentially creates a private right of action for automatic stay violations.  RICO also provides for a private right of action.  However, as noted in *Moses v. Howard University Hospital*, 606 F.3d 789, 794-95 (D.C. Cir. 2010),
>
>> even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the Supreme] Court has held that the plaintiff generally must assert his own legal rights and interest, and cannot rest his claim to relief on the legal rights or interest of third parties.
>
> (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *see also Powers v. Ohio*, 499 U.S. 400, 409[-10] (1991).  ***Here, the injury arising from the conduct of which Yelverton complains was to the estate and only derivatively caused harm to Yelverton***.  Under *Moses*, and other decisions, merely ***derivative harm does not suffice to confer standing on Yelverton to sue on claims that belong to the estate***.  *See, e.g., Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 908 (11th Cir. 1998) ("A creditor will [not] have RICO standing . . . if the injury alleged was suffered only as a result of harm to the corporation.); *Estate of Spirtos v. Superior Court Case*, 443 F.3d 1172, 1175-76 (9th Cir. 2006) (holding that a creditor's RICO claims, alleging injury to her because the trustee conspired to conceal estate assets, were derivative of the estate and that the creditor thus did not have

16

standing); *Eakin v. Goffe, Inc. (In re 110 Beaver St. P'ship)*, 355 Fed. Appx. 432, 438-39, 2009 WL 4874783 (1st Cir. 2009) (affirming the dismissal of an adversary proceeding brought by the partners of the debtor partnership, alleging violations of the automatic stay, because the injury was to the debtor's estate and the estate's claims were encompassed by a settlement agreement with the trustee).

> *In his amended complaint, Yelverton alleges that his sisters violated the automatic stay and RICO by "looting" the estate through a settlement that fraudulently undervalued estate property, resulting in less money in the estate and, by extension, which could result in a lesser dividend to holders of nondischarged claims that might otherwise occur. Such allegations demonstrate that the complained-of injury was inflicted directly on the estate, not him*. The injury alleged by Yelverton was suffered only as a result of an alleged injury to the estate, and the monetary damages he seeks belong to the estate because they are based on acts allegedly causing harm to the estate. Thus, any harm suffered by him is purely derivative and insufficient to confer standing on him. In a sense, therefore, the injury he suffers is not the result of Marm and Edmundson's alleged acts but rather the result of the appointment of the chapter 7 trustee, which divested Yelverton of dominion over estate property and of authority to settle (or not settle) the lawsuit against his sisters. *No matter the level of Yelverton's dissatisfaction, he, as a chapter 7 debtor, simply has no right under the statutory scheme to exercise control over the estate or sue for alleged harms to the estate*. *See Cook v. Wells Fargo Bank, N.A.*, Nos. NM-11-082 & 04-17704, 2012 WL 1356490 ([B.A.P.] 10th Cir. Apr. 19, 2012); *Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935 (D.N.M. 2008).

12/12/14 Mem. Op. at 10-12.

In Appellant's Brief, Yelverton relies on *McGuirl v. White*, 86 F.3d 1232 (D.C. Cir. 1996), for the proposition that his alleged injury confers standing to sue. However, as the Bankruptcy Court stated:

*McGuirl* dealt with the wholly different issue of whether a debtor has standing to be heard regarding whether the court should approve relief sought in the bankruptcy case that would have an adverse impact upon the debtor. In *McGuirl*, the debtors sought to contest the reasonableness of the chapter 7 trustee's attorneys' application for administrative expenses because a grant of the application would reduce the amount of money available to pay the debtors' nondischarged debts. Under 11 U.S.C. § 330(a)(1), such fee applications can be approved only "after notice to the parties in interest," and the court found that, like creditors, the debtors had standing to object to the application because they would be directly affected by the fee award: every dollar of the fee application disallowed would reduce by a dollar the nondischarged debts the debtors would owe after the bankruptcy case.

*       *       *

**The Bankruptcy Code contains no provision conferring upon a debtor the right to sue for injury to the bankruptcy estate that derivatively causes harm to the debtor. The exclusive right to sue for injuries to the estate rests in Webster as the representative of the estate under 11 U.S.C. § 323(a), and Yelverton thus lacks standing to sue.** *See Moses*, 606 F.3d at 795; *Estate of Spirtos*, 443 F.3d at 1175-76. The *McGuirl* court did not hold that a debtor's nondischargeable debts confer standing on that debtor to seek monetary damages for injury inflicted upon the bankruptcy estate. *McGuirl* offers no basis for Yelverton to pursue claims for monetary damages that belong to the estate.

The third-party standing doctrine (that an entity may not assert a statutory claim when the injury was to the estate and only derivatively caused harm to the entity) is a recognition that the statute was not intended to confer a right to sue for monetary damages when the entity has suffered only derivative injury. In those circumstances, the entity is not with the "zone of interests" the statute is intended to protect: Congress could not have intended that both the estate (the directly injured party) and the entity suffering merely derivative injury are entitled to sue under the statute for the same injury. *See Lexmark Int'l,*

18

*Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388-89 (2014).  Stated another way, the amended complaint must be dismissed because:

> the proximate-cause requirement generally bars suits for alleged harm that is "too remote" from the defendant's unlawful conduct.  That is ordinarily the case if the harm is purely derivative of "misfortunes visited upon a third person by the defendant's acts."

*Lexmark*, 134 S. Ct. at 1390-91 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992)).

Ultimately it does not matter whether the question of Yelverton's standing ought to be analyzed based on limitations on third-party standing (*see Lexmark*, 503 U.S. at 1387 n.3), the failure of Yelverton to fall within the "zone of interests" (*see Lexmark*, 503 U.S. at 1388-90), or lack of proximate causation (*see Lexmark*, 503 U.S. at 1390-91).  Under each of these doctrines, Yelverton has no right to sue.

12/12/14 Mem. Op. at 12-15 (footnotes omitted) (emphasis added).  (JA__.)

The Bankruptcy Court's decision is clear and well-reasoned.  Yelverton lacks standing to pursue the claims he alleges in the Amended Complaint because those claims belong to Yelverton's bankruptcy estate.

### B.  The Bankruptcy Court Correctly Held That Yelverton Failed to State a Claim That Marm and Edmundson Violated the Automatic Stay.

Yelverton alleges that Marm and Edmundson violated the automatic stay by defending adversary proceedings that he had filed against them and by engaging in the settlement negotiations with the Trustee to resolve the lawsuits which resulted in the Settlement Agreement.  12/12/14 Mem. Op. at 16.  (JA__.)  The Bankruptcy

Court concluded that, because the Bankruptcy Code does not enjoin defendants from asserting defenses in litigation brought by a debtor, the Amended Complaint failed to state a claim.  The Bankruptcy Court stated:

> The stay applies, by the explicit terms of the statute, only to actions *against* the debtor; it "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate." *Carley Capital Group v. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C. Cir. 1989) (citing *Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982)).  ***There is "no policy of preventing persons whom the bankrupt has sued from protecting their legal rights."*** *Wash. Mut., Inc. v. Fed. Deposit Ins. Corp.*, 659 F. Supp. 2d 152, 155 (D.D.C. 2009) (citing *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989)). Indeed,
>
>> Fulfillment of [the stay's] purpose cannot require that every party who acts in resistance to the debtor's view of its rights violates § 362(a) if found in error by the bankruptcy court.  Thus, someone defending a suit brought by the debtor does *not* risk violation of [the automatic stay] by filing a motion to dismiss the suit, though his resistance may burden rights asserted by the bankrupt.
>
> *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1473 (D.C. Cir. 1991) (emphasis in the original) (citing *Martin–Trigona*, 892 F.2d at 577).
>
> Here, the lawsuit underlying the complained-of settlement negotiations was brought *by* the debtor, not against him.
>
> *     *     *
>
> ***Moreover, the stay cannot operate to bar actions specifically authorized by other provisions of the Bankruptcy Code***. Section 704(a)(1) (11 U.S.C.) authorizes and requires the

> trustee to "collect and reduce to money the property of the estate." In this case, the trustee reduced Yelverton's North Carolina lawsuit and stock (which are property of the estate) to money by settling the suit for $110,000 from the defendants. If the **automatic stay operated to bar the defendants from negotiating such a settlement, the trustee would be hamstrung in discharging his statutory duties.** Such a result cannot be. This allegation, therefore, fails to state a claim for which relief can be granted.

12/12/14 Mem. Op. at 16-18 (bolded emphases added). (JA__.)

The Bankruptcy Court likewise concluded Yelverton's other allegations that Marm and Edmundson violated the automatic stay failed to state a claim. In particular, Yelverton's contention that the automatic stay barred Marm and Edmundson from negotiating the Settlement Agreement with Webster is patently absurd. Rather than repeat the Court's analysis, the portion of the Bankruptcy Court's December 12, 2014 Memorandum Decision relating to this and the other stay violation allegations are incorporated herein. 12/12/14 Mem. Op. at 18-25. (JA__.)

### C. The Bankruptcy Court Correctly Held That Yelverton Failed to State a Claim That Marm and Edmundson Violated RICO Laws.

The Bankruptcy Court correctly held that Yelverton failed to state a claim that Marm and Edmundson violated RICO laws because Yelverton failed to allege sufficient particularized facts to support his allegations of predicate acts, and that, in any event, not one of the alleged acts is a predicate act for RICO. 12/12/14 Mem. Op. at 27. (JA__.)

The Bankruptcy Court summarized the allegations as follows:

> As to predicate acts 1-4 and 8, Yelverton alleges that Marm and/or Edmundson committed mail, wire, and/or bankruptcy fraud by making (either directly or through their attorney Tarkenton or through an unnamed third party) the false claim that Atkinson "is or may be" the owner of Yelverton's 1,333.3 shares of stock.  This false claim was made to the U.S. Trustee (predicate act 3) and in filings in bankruptcy proceedings (predicate acts 1 and 4) and the North Carolina litigation (predicate acts 2 and 8).

12/12/14 Mem. Op. at 27.  (JA__.)

These are the exact same baseless issues and factual allegations that led the

District Court to issue the Pre-Filing Injunction Order.  The District Court stated:

> Not only are Yelverton's accusations in his motion for sanctions plainly without merit, the filing itself is abusive and vexatious.  He asserts that counsel for Edmundson and Marm misrepresented to the bankruptcy court that Wade H. Atkinson, a former business associate of Yelverton's, owned Yelverton's stock in Yelverton Farms.  Appellant's Mot. for Sanctions at 9-10.  Yelverton had made this same accusation repeatedly to the bankruptcy court and others, and it has been rejected as baseless each time.  See Mem. Decision, In re Yelverton, 9-414, Dkt. No. 681, at 6 (Bankr. D.C. Aug. 8, 2014) (finding that Edmundson and Marm had not misrepresented who owned Yelverton Farms and that no confusion existed at the time of the settlement agreement); Mem. Decision, In re Yelverton, 9-414, Dkt. No. 695, at 1-5 (Bankr. D.C. Aug 27, 2014) (finding that Yelverton did not have grounds to file an untimely motion for reconsideration based on the same fraud allegations the bankruptcy court had recently rejected); Pre-Filing Injunction, Yelverton v. Edmundson, et al., 13-1543, at 2, n.1 (N.C. Sup. Ct, Wayne Cnty. Apr. 4, 2014) (finding it "most troubling" that Yelverton had made the same baseless allegations of fraud before the North Carolina Superior Court *the day after* the same claim had been rejected by the bankruptcy court).

Pre-Filing Injunction Order at 3.  (JA__.)

The Bankruptcy Court correctly held that Yelverton failed to state a claim that Marm and Edmundson violated RICO laws.  Rather than repeat the Court's analysis, the portion of the Bankruptcy Court's December 12, 2014 Memorandum Decision relating to Yelverton's RICO claims are incorporated herein.  12/12/14 Mem. Op. at 27-36.  (JA__.)

> **D.** **The Bankruptcy Court Correctly Held That Yelverton's Claims Are Barred by the Doctrines of Collateral Estoppel, Release and *Res Judicata*.**

The Bankruptcy Court correctly held that Yelverton's claims are barred by the doctrines of collateral estoppel, release and res judicata (claim preclusion) because the court-approved Settlement Agreement encompasses Yelverton's claims.  12/12/14 Mem. Op. at 36-37.  (JA__.)

As the Bankruptcy Court stated,

> [t]he Settlement Agreement provided *a full release of all claims by reason of, related to or arising out of any matters raised, or which could or might have been raised, in the [North Carolina] case, the Bankruptcy Case, the Edmundson Case [Adversary Proceeding No. 10-10003] or the Marm Case [Adversary Proceeding No. 10-10004]* including, but not limited to, all matters arising out of the dispute between them related to the ownership interest of Stephen Thomas Yelverton in Yelverton Farms, the division of the property formerly owned by John T. Yelverton, deceased, father of Stephen Thomas Yelverton, Ms. Edmundson, and Ms. Marm, the [North Carolina] case and the Bankruptcy Case. It is specifically understood and agreed that this Settlement Agreement is intended to be a full and complete General Release of any and

23

> all claims by Stephen Thomas Yelverton, individually, of any
> kind whatsoever, against Ms. Edmundson, Mr. Edmundson,
> Ms. Marm, Mr. Marm, their spouses and Yelverton Farms, and
> shall constitute a bar to any further litigation between these
> parties for any matter or claim that existed prior to the
> execution of this Settlement Agreement.

12/12/14 Mem. Op at 37.  (JA__.)

The Bankruptcy Court further held that Yelverton is bound by the Settlement

Agreement, stating:

> Yelverton is constrained by the settlement agreement even
> though he was not a signatory because he was in privity with
> the signatories:  the trustee succeeded to the debtor's interest in
> the bankruptcy estate when he was appointed as the trustee and
> he "[stood] in the shoes of the debtor" in negotiating the
> settlement.  *In re Salander*, 450 B.R. 37, 47 (Bankr. S.D.N.Y.
> 2011); *see also In re Collins*, 489 B.R. 917, 924 (Bankr. S.D.
> Ga. 2012).  The doctrine of release thus operates to bar the
> amended complaint.

12/12/14 Mem. Op at 38.  (JA__.)

The Bankruptcy Court also held that the Amended Complaint was barred by

the doctrine of claim preclusion.  The Court stated:

> The court's order approving the settlement is a []final order
> entitled to "full res judicata effect."  *See In re Gibraltar Res.,
> Inc.*, 210 F.3d 573, 576 (5th Cir. 2000), *quoted in In re
> Salander*, 450 B.R. at 47.  A motion to approve a proposed
> settlement releasing claims against certain parties to the
> settlement brings before the court consideration of all of the
> claims that could be asserted against those parties, and requires
> any party seeking disapproval of the settlement to point to any
> claims being released that have sufficient value to warrant such
> disapproval.  The approval of the settlement is an adjudication
> that there are no such claims having sufficient value to warrant

24

disapproval of the settlement, and an adjudication that those claims being released may not be pursued.

12/12/14 Mem. Op. at 38-39 (footnote omitted).  (JA__.)

The Bankruptcy Court concluded:

As the amended complaint and the record in this case show, there is a history of litigation between Yelverton and his sisters, both in North Carolina and in this bankruptcy court. Yelverton's amended complaint involves the same claims as those raised in that prior litigation because it arises from the same nucleus of facts, namely, the dispute over the ownership and management of the family business and his sisters' activities leading up to the settlement agreement.  The legal theories and remedies in the amended complaint are newly asserted by Yelverton; however, this is precisely what is barred by res judicata.

12/12/14 Mem. Op. at 40.  (JA__.)

The Bankruptcy Court concluded that many of the claims asserted in the Amended Complaint were barred by collateral estoppel because, at the hearing on approval of the Settlement Agreement, Yelverton contested many of the same issues he raised in the Amended Complaint, and the issues were necessarily determined by the Bankruptcy Court when it ruled on the motion seeking approval of the Settlement Agreement.  12/12/14 Mem. Op. at 42-43.  (JA__.)  The Bankruptcy Court correctly ruled that Yelverton's claims are barred by the doctrines of release and *res judicata*.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Appellees Deborah Marm and Phyllis Edmundson respectfully request that the Court dismiss the appeals or, in the alternative, summarily affirm the District Court's Orders Striking Appeals.

Appellees further request that this Court fashion an appropriate form of relief, in the form of an injunction order prohibiting Yelverton from filing any lawsuits or other actions against them in any court, in order to protect them from further harassment by Yelverton.


Dated:  December 10, 2015               ___/s/ Jeffrey L. Tarkenton_____
                                        Jeffrey L. Tarkenton (D.C. Bar No. 376493)
                                        WOMBLE CARLYLE SANDRIDGE &
                                            RICE, LLP
                                        1200 Nineteenth Street, N.W.
                                        Suite 500
                                        Washington, DC  20036
                                        (202) 857-4450
                                        (202) 261-0050 FAX
                                        jtarkenton@wcsr.com

                                        *Counsel for Appellees Deborah Marm and*
                                            *Phyllis Edmundson*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and D.C. Circuit Rule 32(e), the undersigned counsel certifies as follows:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and D.C. Circuit Rule 32(e) because this brief contains 6,907 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(e)(1). This calculation was made using the word-count function of Microsoft Word 2010, the word processing program used to prepare this brief.

This brief complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

Dated: December 10, 2015          /s/ Jeffrey L. Tarkenton
                                  Jeffrey L. Tarkenton

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of December, 2015, I caused a true and correct copy of the foregoing Brief of Appellees Deborah Marm and Phyllis Edmundson to be served via the Court's CM/ECF system and/or by first class, U.S. mail, postage prepaid, upon the following:

Stephen Thomas Yelverton
3303 Wilson Boulevard
Suite E-117
Arlington, VA  22201

Wendell Webster, Trustee
Webster & Frederickson, PLLC
1775 K Street, N.W.
Suite 600
Washington, DC  20006


    /s/ Jeffrey L. Tarkenton
Jeffrey L. Tarkenton